OPINION ON MOTION FOR REHEARING

McCORMICK, Presiding Judge,
delivered the opinion of the court.
Applicant’s motion for rehearing asserts this Court’s opinion on original submission erroneously states the procedural history of this case. Applicant states he has filed only two habeas corpus applications and that what this Court’s opinion on original submission characterized as applicant’s first habeas corpus application was actually an emergency application for a stay of execution so applicant could later file his first habeas corpus application. We agree.
Applicant was convicted of capital murder in 1981 for killing a fourteen-year-old girl in the course of kidnapping her. Gardner v. State, 733 S.W.2d 195, 197-98 (Tex.Cr.App.1987), cert.denied, 488 U.S. 1034, 109 S.Ct. 848, 102 L.Ed.2d 979 (1989). Applicant received the death penalty at his 1981 trial. Id. Applicant claims in this proceeding the trial court erred in admitting Dr. Griffith’s testimony into evidence at the punishment phase of applicant’s 1981 trial on the issue of “future dangerousness.” This testimony apparently was based on statements applicant made to Dr. Griffith and Dr. Grigson during a pretrial psychiatric examination. Applicant claims this evidence was admitted in violation of Miranda v. Arizona’s “prophylactic rule of exclusion.” See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Baker v. State, 956 S.W.2d 19 (Tex.Cr.App.1997). Applicant claims this is so because the warnings he received prior to the pretrial psychiatric examination failed to comply with Estelle v. Smith in that the warnings failed to specifically inform applicant that any statements he made could be used against him at the punishment phase of his capital murder trial. See Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981).[1]
I
Applicant committed the offense in 1980. Applicant’s case was tried in February 1981. Estelle v. Smith was decided in May 1981. This Court disposed of applicant’s direct appeal on April 8, 1987, and the United States Supreme Court denied applicant’s petition for writ of certiorari on January 17, 1989.
Applicant filed his first habeas corpus application in this Court on June 13, 1990. This application contained the same Fifth Amendment claim based on Estelle v. Smith that applicant asserts in this proceeding. Applicant did not raise this claim on direct appeal. See Gardner, 733 S.W.2d at 201-03. However, on March 4, 1992, this Court denied relief on applicant’s first habeas corpus application under the mistaken belief that the claim had been raised and decided adversely to applicant on direct appeal. Applicant filed this, his second, habeas corpus application in this Court on December 20,1994.
The procedural history of this case reflects applicant waited almost eight years after Estelle v. Smith was decided before he asserted his Fifth Amendment claim based on Estelle v. Smith in his first habeas corpus application in June 1990. We note that during applicant’s direct appeal, applicant expressly relied on Estelle v. Smith in support of his claim that admission of Griffith’s testimony violated applicant’s Sixth Amendment right to counsel. See Gardner, 733 S.W.2d at 201, *199 201-02.[2] Applicant also claimed on direct appeal “that the warnings given to him by the psychiatrists were inadequate” under the Fifth Amendment because the warnings operated as an “inducement.” See Gardner, 733 S.W.2d at 202-03. This Court rejected these claims on direct appeal. See Gardner, 733 S.W.2d at 201-03.[3]
Under these circumstances, we still hold applicant procedurally defaulted his Fifth Amendment claim based on Estelle v. Smith. Cf. Ex parte Carr, 511 S.W.2d 523, 525 (Tex.Cr.App.1974). Applicant had an opportunity to raise this claim on direct appeal as the record from the direct appeal indicates applicant expressly relied on Estelle v. Smith to claim admission of Griffith’s testimony violated his Sixth Amendment right to counsel. See Gardner, 733 S.W.2d at 201-202. There is no valid reason why applicant could not have raised on direct appeal the Estelle v. Smith claim he asserts in this proceeding. It is well-settled “that the writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal.” Ex parte Goodman, 816 S.W.2d 383, 385 (Tex.Cr.App.1991); see Ex parte Groves, 571 S.W.2d 888, 890 (Tex.Cr.App.1978) (habeas corpus does not lie as a substitute for an appeal).
Applicant argues the record shows he “diligently” litigated his Estelle v. Smith claim. He speculates that had he raised this claim on direct appeal, this Court “could have refused to hear the claim on the basis that its resolution required extra record facts,” since on original submission in this writ proceeding this Court relied on evidence (i.e., the evidence of the warnings Grigson also provided applicant prior to the psychiatric interview; see opinion on original submission) presented by the State in post conviction proceedings to determine that applicant was properly warned.
We disagree. Had applicant raised the claim on direct appeal, this Court, if it determined that Griffith’s warnings were inadequate, could have granted relief on the basis that the record failed to show the prosecution carried its burden of proving the warnings applicant received were adequate. See Watson v. State, 762 S.W.2d 591, 600 (Tex.Cr.App.1988) (prosecution has burden to show that a defendant waived his privilege against self-incrimination). Or, since Estelle v. Smith had not been decided at the time of the psychiatric interviews, this Court could have abated applicant’s direct appeal for an evidentiary hearing in the trial court on the warnings that Grigson also provided. Had applicant lost on this issue on direct appeal, he also could have petitioned the United States Supreme Court to review this Court’s decision on the very issue he raises now 16 years after he could have raised it on direct appeal. This issue could have been resolved by January 1989 when the United States Supreme Court denied applicant’s certiorari petition from his direct appeal.
Because the Estelle v. Smith claim applicant now asserts could have been raised and resolved during applicant’s direct appeal, the State’s (and society’s) valid and legitimate interest in the finality of this 16-year-old conviction and sentence carries great weight in deciding whether to consider the merits of applicant’s Estelle v. Smith claim now. Finality as well as other equitable considerations weigh in favor of deciding applicant procedurally defaulted the Estelle v. Smith claim he asserts in this proceeding. See Ex parte Drake, 883 S.W.2d 213, 215 (Tex.Cr.App.1994) (habeas corpus relief is underscored by elements of fairness and equity).
*200 Applicant’s Estelle v. Smith claim cannot be characterized as an “exceptional” constitutional claim so as to excuse his procedural default. See Ex parte Goodman, 816 S.W.2d at 387 (Clinton, J., concurring) and other cases cited in Opinion on Original Submission. Applicant’s Estelle v. Smith claim does not affect the factual question of applicant’s guilt or innocence, the reliability of the jury’s findings on the special issues at applicant’s 1981 trial, or the “voluntary” nature of applicant’s statements to the psychiatrists. No one is claiming applicant’s statements to the psychiatrists resulted from torture or some other process that overbore applicant’s will not to speak. Holding that applicant procedurally defaulted the Fifth Amendment claim he asserts now is not a “grievous wrong.” Cf. Brecht v. Abrahamson, 507 U.S. 619, 634-37, 113 S.Ct. 1710, 1720-21, 123 L.Ed.2d 353 (1993) (historic meaning of habeas corpus is to afford relief to those whom society has “grievously wronged”).
Applicant argues a sua sponte holding that he procedurally defaulted his Fifth Amendment claim based on Estelle v. Smith violates due process. We disagree. Applicant had an opportunity to raise this claim during the direct appeal of his conviction. See Gardner, 733 S.W.2d at 201-02.
Applicant’s request for habeas corpus relief is denied.
MEYERS, J., not participating.

. It is not clear from the 1981 trial record whether Griffith’s testimony was based on any statements applicant made to him during the psychiatric interview. Griffith testified that there was a sexual component to applicant’s crime, that applicant was dangerous and would kill again, and that applicant showed no remorse during the psychiatric interview. Griffith did not testify about any statements applicant made to him about the crime in this case or that his opinions were based on his "discussion” with applicant. But see Estelle v. Smith, 451 U.S. at 458-60, 464-65 fn. 9, 101 S.Ct. at 1871, 1873-74 fn. 9 (psychiatrist testified on cross-examination about statements the defendant made to him about the crime and that his findings were based on his "discussion” with the defendant).

. This Court’s file from applicant’s direct appeal indicates applicant’s original brief, which was filed on January 3, 1983, expressly relied on Estelle v. Smith in support of applicant's points of error one through seven. Applicant’s first supplemental brief, which was filed on August 26, 1983, also expressly relied on Estelle v. Smith in support of applicant’s supplemental arguments and authorities in support of his "grounds” of error one through seven.

. This probably explains why this Court on March 4, 1992, erroneously determined on applicant’s first habeas corpus application that applicant's Fifth Amendment claim based on Estelle v. Smith had been decided adversely to applicant on direct appeal. However, as applicant stated in his motion for rehearing of our March 4, 1992, decision denying him relief on his first habeas corpus application, "the allegations presented” in applicant’s first habeas corpus application were "legally and factually distinct” from the claims raised and decided on direct appeal.